# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD

DEBBY L. KANTOROWICZ,
          Appellant,

      v.

DEPARTMENT OF THE AIR FORCE,
          Agency.

DOCKET NUMBER
AT-0752-21-0395-I-1

DATE: June 5, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Bradley R. Marshall, Esquire, Mt. Pleasant, South Carolina, for the
    appellant.

Christopher Hawthorne, Esquire, Joint Base Andrews, Maryland, for the
    agency.

**BEFORE**
Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member[2]

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

[2] Member Leavitt's name is included in decisions on which the three-member Board completed the voting process prior to his March 1, 2023 departure.

**FINAL ORDER**

¶1 The appellant has filed a petition for review of the initial decision, which sustained the appellant's removal for misconduct. On petition for review, the appellant argues, among other things, that the agency's charges against her lacked specificity, the deciding official's consideration of ex parte conversations violated her due process rights and constituted harmful error, and the agency failed to train her adequately in violation of merit systems principles. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to supplement the administrative judge's findings related to the negligent performance of duties charge and the appellant's due process and harmful error claims, to address the appellant's new argument that her alleged lack of training violated 5 U.S.C. § 2301(b)(7), and to supplement the administrative judge's penalty analysis, we AFFIRM the initial decision.

**DISCUSSION OF ARGUMENTS ON REVIEW**

¶2 In August 2019, the agency noncompetitively appointed the appellant to the position of Nonappropriated Fund (NAF) Human Resources Officer (HRO) under

the Schedule A appointment authority, for which the appellant claimed eligibility based on a disability. Initial Appeal File (IAF), Tab 5 at 99, Tab 15 at 22-24, Tab 27 at 51-53. As the NAF HRO, the appellant was responsible for managing an installation NAF HR office and executing its programs, including ensuring such programs followed regulations and policies. IAF, Tab 5 at 86-89. Her specific duties included the recruitment and placement of NAF employees, which required knowledge of laws, regulations, and policies related to recruitment and staffing. *Id.* at 87-88. Prior to her appointment as NAF HRO, the appellant gained several years of experience in recruiting and staffing and interpreting policy and regulations working in HR for the agency, including during a previous appointment as a NAF HRO from 2017 to 2018. *Id.* at 72-75.

¶3 In September 2019, the appellant received 1 week of in-person training at the Air Force Services Center (AFSVC), which provided technical support to installation HR offices on USA Staffing—a software application integrated with the USA Jobs website which the agency adopted in December 2019 as its hiring platform for NAF positions. IAF, Tab 5 at 106, 138, Tab 12 at 89, Tab 15 at 205. AFSVC provided each attendee with the agency NAF USA Staffing User Guide (USA Staffing Guide). IAF, Tab 5 at 135-212, Tab 15 at 253-54. From its adoption until approximately September 2020, the appellant's office used USA Staffing to advertise and fill positions. IAF, Tab 28, Hearing Recording Day 1 (HR-1) (testimony of the appellant's subordinate), Tab 30, Hearing Recording Day 2 (HR-2) (testimony of the appellant), Tab 32 at 4-6. In August or September 2020, the subordinate to whom the appellant had assigned USA Staffing responsibilities left the agency. HR-2 (testimony of the appellant).

¶4 In September 2020, the appellant and the NAF HR office began filling positions through a shortened process by soliciting paper résumés mainly through word-of-mouth, providing those résumés to hiring managers, and hiring employees directly without competing vacancies through USA Staffing. HR-1 (testimony of the appellant's subordinate). The appellant informed her supervisor

that she obtained permission from AFSVC to fill vacancies by directly appointing individuals using paper résumés in this manner because positions at the installation were "hard-to-fill." IAF, Tab 5 at 59-60, 130, HR-1 (testimony of the appellant's supervisor). Six employees were hired through this procedure. IAF, Tab 5 at 129, 238-43, HR-1 (testimony of the appellant's supervisor).

¶5    After learning these procedures were incorrect, the agency removed the appellant based on two charges of misconduct: (1) negligent performance of duties, for failing to announce vacancies and directly hiring candidates without competition in violation of agency policy; and (2) lack of candor, for telling her supervisor that AFSVC gave her permission to accept paper résumés from applicants and hire directly because positions at the installation were hard to fill. IAF, Tab 5 at 16-29, 109-114. The appellant appealed her removal to the Board. IAF, Tab 1.

¶6    After affording the appellant her requested hearing, the administrative judge affirmed the appellant's removal, finding that the agency proved its charges by preponderant evidence, that the appellant failed to prove her affirmative defenses of race, sex, or disability discrimination, that the appellant failed to show she was denied minimum due process, and that the agency proved a nexus between its action and the efficiency of the service and the reasonableness of its penalty. IAF, Tab 39, Initial Decision (ID) at 3-21. On review, among other contentions, the appellant reiterates her argument that the charges' lack of specificity violated her due process rights and constituted harmful error. Petition for Review (PFR) File, Tab 1. The appellant also raises a new argument that the agency's alleged failure to adequately train her violated the merit systems principle in 5 U.S.C. § 2301(b)(7). *Id.* at 12-15. The agency filed a response. PFR File, Tab 3.

¶7    Upon review, we agree with the administrative judge's findings in the initial decision. However, the administrative judge did not analyze several issues raised during the course of the appeal which merit discussion—namely, the agency's allegation in the negligent performance of duties charge that the

appellant violated the NAF Personnel Guide, and the appellant's allegations that the lack of candor charge's insufficient specificity and the deciding official's consideration of ex parte communications violated her due process rights and constituted harmful error. Accordingly, in addition to the appellant's new allegation that her purported lack of training violated 5 U.S.C. § 2301(b)(7), we address these contentions here.

The appellant's conduct described in the negligent performance of duties charge violated the agency's NAF Personnel Guide.

¶8      In the negligent performance of duties charge, the agency alleged that the appellant's conduct was negligent because she failed to adhere to agency policies, namely the NAF Personnel Guide[3] and the USA Staffing Guide. IAF, Tab 5 at 109. In finding that the agency proved this charge, the administrative judge discussed how the appellant knew or should have known of her responsibility to follow agency policy in the USA Staffing Guide but failed to do so. ID at 7. Specifically, the administrative judge noted that the record reflects that the appellant was given a copy of the USA Staffing Guide and attended training on the process in September 2019, nearly a year before giving a direction to initiate a "direct hire" or "straight hire" process. *Id.* The administrative judge did not discuss the appellant's alleged violation of the agency's NAF Personnel Guide, and accordingly we do so here.

¶9      Although the administrative judge was correct to find that the appellant's conduct violated the USA Staffing Guide, ID at 4, 7-8, the June 2019 NAF Personnel Guide contains the instruction that most aptly captures the scope of the appellant's violation of agency hiring policy. Section 4.5.1 of the NAF Personnel

---

[3] This document is referenced by its full title, the Nonappropriated Fund Personnel Program Management and Administration Procedures Guide, or other abbreviations thereof, at other points in the record. *See, e.g.*, IAF, Tab 5 at 115, 233. Although the document itself is not in the record, it is publicly available on the internet and the Board may take official notice of publicly available documents. *Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶ 19 n.3 (2016).

Guide states in relevant part: "NAF-HR Section is responsible for ensuring: . . . 4.5.1.3. All positions open for recruitment are announced via the authorized web-based system. There is no restriction in using other recruitment sources as well; however, applicants must be directed to make application via the authorized website." U.S. Air Force, *NAF Personnel Program Management and Administration Procedures Guide*, § 4.5.1 (June 2019), https://www.lafss.com/wp-content/uploads/docs/naf-human-resources/naf-guide.pdf. The appellant's undisputed conduct—hiring employees based on applicants' paper résumés without posting announcements through USA Staffing, the agency's authorized web-based hiring system, HR-2 (testimony of the appellant)—violated this provision.[4] Further, as her own correspondence shows, the appellant was aware of her obligation to follow the NAF Personnel Guide at the time of her misconduct. IAF, Tab 12 at 50-51.

¶10   Culpable negligence in the performance of official duties is a failure to exercise the degree of care required under the particular circumstances, which a person of ordinary prudence in the same situation and with equal experience would not omit. *Velez v. Department of Homeland Security*, [101 M.S.P.R. 650](#), ¶ 11 (2006), *aff'd*, 219 F. App'x 990 (Fed. Cir. 2007). Accordingly, in addition to the appellant's violation of the USA Staffing Guide as found by the administrative judge, the appellant's failure to follow the NAF Personnel Guide despite her knowledge of her duty to do so, her responsibility, as NAF HRO, to ensure her office's programs adhered to policy, and her years of experience, supports the administrative judge's finding that the agency proved the negligent performance of duties charge. *See id.*, ¶¶ 11-24 (finding that an appellant's

---

[4] Though he disputed that the appellant's conduct was negligent, as noted by the administrative judge, the appellant's representative essentially conceded the factual accuracy of the depiction of the appellant's conduct in the negligent performance of duties charge at the hearing. ID at 7; HR-2 (the appellant's representative's closing argument).

violation of an agency's policy of which he was aware constituted negligent performance of duties).

<u>The charges provided the appellant with sufficiently specific notice of the reasons for her removal.</u>

¶11    The appellant argues that, because the charges omitted details such as the dates of her misconduct and names of the individuals she improperly hired, the proposal notice did not provide her with a meaningful opportunity to reply in violation of her due process rights and constituted harmful error.[5]  PFR File, Tab 1 at 10-11.  Due process in removal proceedings requires notice of the charges, an explanation of the agency's evidence, and an opportunity to respond. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985).  Under 5 U.S.C. § 7513(b), an employee against whom an adverse action is proposed is entitled to be informed of the specific reasons for the agency's proposed action. *Ragolia v. U.S. Postal Service*, 52 M.S.P.R. 295, 301, *aff'd*, 983 F.2d 1086 (Fed. Cir. 1992) (Table).  Section 7513(b) requires that the information provided by the agency be sufficiently specific to permit the employee to properly respond to the agency's charge.  *Id.*  The Board has held that the notice requirement is satisfied when the proposal and any attachments to it, taken together, provide the employee with specific notice of the charges so that she can make an informed and meaningful reply.  *Alvarado v. Department of the Air Force*, 97 M.S.P.R. 389, ¶ 15 (2004).

¶12    Reversal of an action for harmful error is warranted when a procedural error, whether regulatory or statutory, likely had a harmful effect upon the outcome of the case before the agency.  *Stephen v. Department of the Air Force,* 47 M.S.P.R. 672, 681 (1991).  Harmful error cannot be presumed; the Board will

---

[5] The appellant also alleges that the lack of specificity in the negligent performance of duties charge violated agency policies and procedures, PFR File, Tab 1 at 17-18, but does not identify what these policies and procedures were.  Thus, we have no basis to consider this claim further.

reverse an action for harmful error only when the record shows that the procedural error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Id.* at 681, 685.

¶13    The administrative judge addressed the appellant's due process and harmful error arguments with respect to the negligent performance of duties charge, correctly finding them unsupported because the appellant was notified of the employees she improperly hired in the evidence file provided with the proposal notice, and her replies to the proposal notice indicated that she understood and addressed the charge.[6]  ID at 17-19; *see Alvarado*, 97 M.S.P.R. 389, ¶ 15.  The appellant provides no basis to disturb these findings.

¶14    The appellant's claim that the lack of candor charge lacked sufficient specificity, which the administrative judge did not address, is also unsupported. The lack of candor charge notified the appellant of the approximate date of her statement, "in or around" September 2020, the name of her supervisor to whom she made the statement, a description of the statement that lacked candor, that AFSVC gave her permission to accept paper résumés and to make direct hires, and an explanation as to why that statement lacked candor, because the appellant never actually received such permission.  IAF, Tab 5 at 109.  The proposal notice was also accompanied by a statement from the appellant's supervisor further describing the appellant's statement and its context, as well as other evidence supporting the charge, including statements from AFSVC representatives stating that the claimed permission would not have been given.  *Id.* at 127-30, 213-14, 233.

---

[6] Though the administrative judge purported to only address the appellant's due process argument, he analyzed the appellant's claim that the negligent performance of duties charge lacked sufficient specificity as alleged violations of both the appellant's due process rights and 5 U.S.C. § 7513(b).  ID at 17-19; *see Loudermill*, 470 U.S. at 546; *Ragolia*, 52 M.S.P.R. at 301.

¶15    Finally, the appellant's written reply—in which she explained that the inaccuracies in her statement that formed the basis of the charge were not due to her lack of candor, but to her mishearing an AFSVC representative's statement about paper résumés during the USA Staffing training because of noise in the room, or her misunderstanding of the difference between résumés and applications caused by her lack of training, *id.* at 102—evidenced that she understood the charge.  Thus, the appellant fails to demonstrate how the lack of candor charge violated her due process rights or 5 U.S.C. § 7513(b).  *See Alvarado*, 97 M.S.P.R. 389, ¶¶ 8-15 (finding that under either the requirements of minimum due process or 5 U.S.C. § 7513(b), an appellant received sufficient notice in a careless workmanship charge which referred to discrepancies listed in attached documentation, and attached to the notice was a chart listing his discrepancies, which the appellant understood as evidenced by his reply).  Even if either of the charges lacked the specificity required by 5 U.S.C. § 7513(b), there is no indication in the record that the appellant would have responded to the charges differently or that the deciding official would have reached a different result had either charge been set forth with more specificity.  Accordingly, no harmful error resulted.

The deciding official's consideration of ex parte communications did not violate the appellant's due process rights or constitute harmful error.

¶16    The appellant also contends that the deciding official's consideration of ex parte communications about her proposed removal violated her due process rights and constituted harmful error.[7]  PFR File, Tab 1 at 9-10, 16.  Because the administrative judge did not address these arguments, we do so here.

---

[7] The appellant's contention that the deciding official was "biased" appears merely to rephrase her argument that his consideration of ex parte communications violated her due process rights.  IAF, Tab 11 at 7; PFR File, Tab 1 at 10.

¶17    The record indicates that the deciding official engaged in ex parte communications with several installation employees, including the appellant's supervisor and other members of the civilian personnel office, regarding the appellant's proposed removal prior to issuing his decision notice. IAF, Tab 18 at 9-15, 23-31, 92-96, HR-1 (testimony of the appellant's supervisor and of the deciding official), HR-2 (testimony of the proposing official). He stated that some of these conversations were prompted by his need for clarification on hiring procedures and the proposal "package." IAF, Tab 18 at 13, 21, 94, HR-1 (testimony of the deciding official). He also stated that, prompted by the appellant's claim in her reply that her Schedule A letter put the agency on notice that she was disabled and in need of a reasonable accommodation, he spoke with an HR official who informed him that the appellant had not requested a reasonable accommodation, that a request for a reasonable accommodation needed to be supported by medical documentation, and that the appellant's Schedule A letter, which stated the nature of her disability but did not provide further detail, was insufficient to support a request for a reasonable accommodation. IAF, Tab 5 at 99, 103, Tab 18 at 75, 77-81, HR-1 (testimony of the deciding official). Lastly, the appellant's supervisor asked the deciding official between the issuance of the proposal notice and the deciding official's decision for permission to speak to AFSVC about issues resulting from the appellant's misconduct and to fund assistance of the NAF HR office.[8] IAF, Tab 18 at 234, HR-1 (testimony of the appellant's supervisor), HR-2 (testimony of the proposing official).

¶18    Pursuant to the decisions of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Ward v. U.S. Postal Service,* 634 F.3d 1274, 1279-80

---

[8] The deciding official also spoke to his supervisor about the appellant's proposed removal and related matters prior to the issuance of his decision notice, but it is unclear what information, if any, he received during those conversations. IAF, Tab 18 at 23-31.

(Fed. Cir. 2011), and *Stone v. Federal Deposit Insurance Corporation,* 179 F.3d 1368, 1376-77 (Fed. Cir. 1999), a deciding official violates an employee's due process rights when he relies upon new and material ex parte information as a basis for his decisions on the merits of a proposed charge or penalty. In *Stone,* the Federal Circuit identified three factors to be used to determine if ex parte information is new and material: (1) whether the ex parte information introduced cumulative, as opposed to new, information; (2) whether the employee knew of the information and had an opportunity to respond; and (3) whether the communication was of the type likely to result in undue pressure on the deciding official to rule in a particular manner. 179 F.3d at 1377. The ultimate inquiry in determining whether a due process violation occurred is whether the ex parte communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances. *Id.* The agency does not dispute that the appellant was not notified of the information the deciding official obtained during his ex parte communications, and thus only the first and third *Stone* factors are at issue. IAF, Tab 18 at 14; *see* PFR File, Tab 3 at 7-8.

¶19    *Ward, Stone*, and their progeny recognize that not all ex parte communications rise to the level of due process violations. Thus, a deciding official does not violate an employee's right to due process when he considers issues raised by an employee in her response to the proposed adverse action and then rejects those arguments in reaching a decision. *Grimes v. Department of Justice,* 122 M.S.P.R. 36, ¶ 13 (2014). Further, a deciding official does not violate an employee's due process rights by initiating an ex parte communication that only confirms or clarifies information already contained in the record. *Blank v. Department of the Army,* 247 F.3d 1225, 1229 (Fed. Cir. 2001). In *Blank*, the Federal Circuit found that a deciding official's investigatory interviews to determine whether there were inconsistencies in the agency's case and to ascertain the veracity of an appellant's affirmative defenses only confirmed and

clarified information already in the record without introducing new and material information, and therefore did not violate the appellant's due process rights. *Id.* at 1227, 1229-30.

¶20    In *Mathis v. Department of State*, 122 M.S.P.R. 507, ¶¶ 6-16 (2015), we considered whether a deciding official's ex parte communications regarding assertions an appellant made in reply to a proposed removal for unacceptable performance introduced new, as opposed to cumulative, information. In her reply to her proposed removal, the appellant in *Mathis* attributed her low production rate to computer outages and work on complex cases, and alleged that the agency ignored her requests for a reasonable accommodation. *Id.*, ¶ 3. The deciding official investigated these alleged mitigating circumstances by emailing an HR representative, who responded that the agency made allowances for significant computer outages, that complex cases were part of the normal work of the appellant's position, and that the appellant never sent any information to the agency's reasonable accommodation division despite being informed of the reasonable accommodation process. *Id.*, ¶ 4. We found that the deciding official's consideration of this information did not introduce new information because the HR representative's response merely clarified or confirmed whether the allegations raised in the appellant's reply were supported by the facts, and was consistent with information already in the record. *Id.*, ¶ 12.

¶21    Here, the deciding official's ex parte communications did not introduce new information for the reasons we described in *Mathis*. The communications in which the deciding official obtained clarification of hiring procedures and information in the proposal package are firmly under the ambit of investigatory communications that do no more than confirm or clarify the record, and consistent with *Blank* and *Mathis*, did not violate the appellant's due process rights. *See Blank,* 247 F.3d at 1229-30; *Mathis*, 122 M.S.P.R. 507, ¶ 12. Indeed, descriptions of proper hiring practices were already contained in the record the agency relied on to take its action and which was provided to the appellant. IAF,

Tab 5 at 115, 127-130, 213, 233. As in *Mathis*, the deciding official's ex parte communications regarding the absence of a request for, or documentation to support, a reasonable accommodation from the appellant merely clarified or confirmed whether the disability discrimination allegation raised in the appellant's reply was supported by facts. Further, the content of these communications comported with the absence of any actual reasonable accommodation request or supporting medical documentation in the record. IAF, Tab 18 at 74-75, 83, HR-1 (testimony of the appellant's supervisor and of the deciding official). There is also no indication in the record that the deciding official received any new information from the appellant's supervisor during her requests for permission to speak to AFSVC or to fund assistance for the NAF HR office. Accordingly, the deciding official's ex parte communications did not introduce new information under the first *Stone* factor.

¶22    Regarding the third *Stone* factor, we follow our holding in *Mathis*, in which the information contained in the ex parte communications was of the same character as the information at issue here, and was found to be not of the type likely to result in undue pressure upon the deciding official to rule in a particular manner. 122 M.S.P.R. 507, ¶ 15. This case is dissimilar from instances in which, for example, deciding officials placed decisive weight on new information obtained in ex parte communications or considered aggravating factors which were not contained within the agencies' proposal notices without giving the appellants an opportunity to respond. *See, e.g.*, *Young v. Department of Housing and Urban Development,* 706 F.3d 1372, 1377 (Fed. Cir. 2013) (finding that ex parte communications constituting a "huge" departure from the record contained more than confirming and clarifying information, and were new and material because they played a significant and overwhelming role in the removal decision); *Solis v. Department of Justice*, 117 M.S.P.R. 458, ¶¶ 9-10 (2012) (ex parte information consisted of deciding official's consideration of appellant being *Giglio*-impaired).

¶23      Thus, weighing all of the *Stone* factors, we find that the information contained in the ex parte communications was not "so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances," *Stone,* 179 F.3d at 1377, and conclude that the deciding official's consideration of ex parte communications did not violate the appellant's due process rights. We also find that, to the extent that the deciding official's ex parte communications may have constituted procedural error,[9] there is no indication in the record that any such error was harmful in that it was likely to have caused the agency to reach a conclusion different from the one it would have reached absent the error. *See Tom v. Department of the Interior*, 97 M.S.P.R. 395, ¶ 43 (2004).

The appellant's claim that she was not adequately trained in violation of the merit system principle in 5 U.S.C. § 2301(b)(7) does not warrant relief.

¶24      Finally, the appellant contends that deficiencies in the AFSVC in-person USA Staffing training and USA Staffing Guide and her unheeded requests for training to her supervisors affected her ability to perform her duties. PFR File, Tab 1 at 7-8, 12-14. Although the administrative judge appropriately credited the testimony of other witnesses who refuted the appellant's arguments that the USA Staffing training or guide were inadequate, ID at 12 n.6 (citing HR-1 (testimony of the AFSVC representative and of the Goodfellow NAF HRO)), the appellant raises these issues on review to argue for the first time that the agency violated the merit system principle in 5 U.S.C. § 2301 (b)(7), which states "[e]mployees should be provided effective education and training in cases in which such education and training would result in better organizational and individual performance." PFR File, Tab 1 at 12-13. Because she fails to show that this new

―――――――――――――――

[9] Though the appellant alleges that the deciding official's consideration of ex parte communications violated the agency's policies and procedures, PFR File, Tab 1 at 17-18, she fails to identify what these policies and procedures were. Thus, we need not consider this claim further.

argument is based on new and material evidence not previously available despite her due diligence, we need not consider it. *Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016).

¶25    However, even if we were to consider the argument, it would fail on the merits because the Board has long held that the merit systems principles set forth in 5 U.S.C. § 2301 are not self-executing and that, absent evidence that an agency violated a law, rule, or regulation implementing the merit system principle, i.e., committed a prohibited personnel practice, an alleged violation thereof does not give rise to an affirmative defense to an adverse action. *LeBlanc v. Department of Transportation*, 60 M.S.P.R. 405, 417 (1994), *aff'd*, 53 F.3d 346 (Fed. Cir. 1995) (Table). Because the appellant has not identified a law, rule, or regulation implementing section 2301(b)(7) that the agency violated, let alone alleged that the agency committed a prohibited personnel practice, her allegation that the agency violated section 2301(b)(7) fails.[10]

_____

[10] Aside from the appellant's claim under section 2301(b)(7), her argument that she was inadequately trained by the agency is contradicted by the weight of the evidence. We agree with the administrative judge's refutation of this argument, and also note that the record shows that after the USA Staffing training, the appellant was allowed to release job vacancies on USA Staffing only after AFSVC confirmed her ability to input vacancies into the platform. Tab 12 at 39-40, HR-1 (testimony of the AFSVC representative). Further, the Goodfellow Air Force Base NAF HRO stated that in August 2020, prior to the appellant's misconduct, she provided the appellant with a user guide with step-by-step instructions for each section of USA Staffing she created and kept up-to-date. IAF, Tab 18 at 128-29. The appellant's supervisor stated that she never learned, from the appellant or elsewhere, that the USA Staffing training was poorly conducted, that the USA Staffing Guide had any gaps, or that the appellant had any difficulty understanding how to use USA Staffing. HR-1 (testimony of the appellant's supervisor). Contrary to the appellant's assertions, the proposing official stated that she did not recall the appellant ever raising concerns with her about training. HR-2 (testimony of the proposing official). Finally, even if the agency's USA Staffing training or USA Staffing Guide was deficient in any respect, the appellant could have chosen to avail herself of assistance from AFSVC—which's purpose was to assist installations and with which she was in regular contact—or others in the agency to operate USA Staffing rather than resort to misconduct. IAF, Tab 12 at 31, 35-37, 50-51, 53-54, 62-63, 92, Tab 15 at 205, 234-37, 241, 257-58, Tab 18 at 128-29, Tab 27

The penalty of removal is within the tolerable limits of reasonableness.

¶26    In assessing the agency's penalty determination, the administrative judge found that the deciding official had considered the relevant *Douglas* factors and that the penalty of removal was within the tolerable limits of reasonableness. ID at 19-21. The administrative judge noted that the deciding official had considered the appellant's 11 years of service, clean disciplinary record, and positive performance ratings as mitigating factors. ID at 20. Although we agree with the administrative judge's conclusion that the penalty of removal was within the tolerable limits of reasonableness, we supplement his penalty analysis to consider an additional potential mitigating factor.

¶27    Although the appellant had notice of the proper hiring procedures, her office was understaffed and the staff members who were in place did not have adequate training on hiring procedures. IAF, Tab 18 at 171-77. The appellant raised concerns with her supervisor but indicated that she was not getting much help. *Id.* 177-78. After the appellant's removal, the agency brought in a HRO from another facility to assist with various human resources matters; she reported to management that "after being present in the NAF HRO it was clear the current personnel on staff needed a foundational training on all things NAF HRO," including USA Staffing and the recruitment process. IAF, Tab 14 at 80. These staffing and training issues may have contributed to the work environment in which the appellant filled positions without following the required procedures. If the agency had only charged the appellant with negligent performance of her duties, there might have been grounds for mitigation. However, in light of the appellant's lack of candor and her failure to fully accept responsibility for her actions, we find that the appellant's supervisors reasonably lost trust and

at 47, HR-1 (testimony of the ASFVC representative), HR-2 (testimony of the appellant).

confidence in her ability to carry out the duties of her position.  We therefore find that the penalty of removal was within the tolerable limits of reasonableness.

## NOTICE OF APPEAL RIGHTS[11]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* <u>42 U.S.C. § 2000e-5</u>(f) and <u>29 U.S.C. § 794a</u>.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  <u>5 U.S.C. § 7702</u>(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  <u>5 U.S.C. § 7702</u>(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[12] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                               /s/ for
                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.